**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CR. No. 2:06-mj72-MEF** |
| | ) | |
| **JOSHUA WAYNE HESTER** | ) | |

**RESPONSE BY MR. HESTER TO GOVERNMENT'S**
**APPEAL OF PRETRIAL RELEASE ORDER**

COMES NOW, Joshua Wayne Hester, by undersigned counsel, who sets forth the following in opposition to the government's appeal of the order of the Magistrate Judge, entered on August 2, 2006, releasing Mr. Hester on a combination of conditions, after a detention hearing at which both sides presented evidence:

**FACTS**

This case has its genesis in information that came to the attention of Cpl. Johnny Russell, a detective with the Millbrook Police Department, more than a year ago, in June, 2005. Mr. Hester was charged in state court in Elmore County with offenses arising out of the same images and information which formed the basis of the criminal complaint issued by this Court and remained in jail there until his bond was reduced and he was able to post bail to be released on May 9, 2006.

On July 31, 2006, Mr. Hester learned that a warrant for his arrest on a criminal complaint had issued in this district and he contacted the FBI. He arranged with the agent with whom he spoke to meet the agent at the federal courthouse the next morning so that

he could be taken into custody for processing.  He did as he told the agent he would, met him at the prearranged time, was processed and had his initial appearance at which the government moved to detain Mr. Hester.  It informed the Magistrate Judge that it was prepared to go forward with the detention hearing and Mr. Hester agreed to do so.  The Magistrate Judge set the detention hearing for the following day, August 2, 2006, since the case was not regularly assigned to the duty Magistrate Judge who conducted the initial appearance.

The detention hearing, in addition to Cpl. Russell recounting how the case began and the evidence relating to the case, featured a plethora of witnesses who have known Mr. Hester for considerable spans of time throughout his 22 years of life.  Several provided testimony by taking the witness stand and the remaining information from witnesses was provided to the Magistrate Judge by proffer, in accordance with 18 U.S.C. § 3142(f)(2).  What emerged was a clear picture of a young man with life-long roots in the Montgomery area who is gainfully employed full-time in the construction trades, who has no propensity for violence, and is a kind and caring soul of whom many think well.  The evidence at the detention hearing also showed that, in his effort to improve his life, he's made preparations to attend Auburn University in Montgomery.

In addition to the testimony elicited by the government on direct examination, Cpl. Russell also disclosed that he was aware that Mr. Hester had made bail in Elmore County on May 9, 2006, was living in the Millbrook community at his mother's home and was aware of neither problems involving Mr. Hester, nor any claims of any type of misconduct on Mr. Hester's part since he had been able to make bail on the Elmore County charges.  Cpl. Russell explained that he was the "point person" for contact by members of the family  of

2

the girls who have claimed the illicit sexual activity by Mr. Hester, along with its photographing, and that he had received no calls or other reports of Mr. Hester trying to contact the girls, or in any way engaging in any kind of improper behavior. In short, Cpl. Russell disclosed that there was absolutely no information known to law enforcement, of which he was aware, that Mr. Hester was doing anything other than living a law-abiding life while released on bail. Naturally, Cpl. Russell stated that as the law enforcement officer responsible for the investigation of Mr. Hester he would likely know of any claims of misconduct by him.

After considering all of the evidence, the Magistrate Judge found that Mr. Hester had rebutted the presumption for cases brought under 18 U.S.C. § 2251(a) (the statute which Mr. Hester is accused of violating), contained in 18 U.S.C. § 3142(e), and determined that there were a combination of conditions which together would "reasonably assure the appearance of [Mr. Hester] as required and the safety of any other person and the community", 18 U.S.C. § 3142(c)(B), and crafted an appropriate order granting release. This Court added the mandatory conditions of electronic monitoring and home detention which have apparently been added as a result of recent Congressional action amending 18 U.S.C. § 3142. See P.L. 109-248, § 216 (H.R. 4472)(Improvements to the Bail Reform Act to Address Sex Crimes and Other Matters) (2006). The government did not bring this new statutory provision to the attention of the Magistrate Judge when the release order did not include electronic monitoring and home detention and defense counsel was unaware of it too since it had gone into effect on July 27, 2006, a mere 6 days prior to the date the detention hearing was held. Doubtless, the Magistrate Judge was as unaware of this new provision as was Mr. Hester's counsel or else those provisions would have been included

3

as part of the release order.  One can reasonably conclude that counsel for the government

was likewise unaware of the new amendments to § 3142 since the government made no

mention of those amendments at the detention hearing, raising it for the first time as part

of its notice of appeal of the release order entered in the court below.  As modified by this

Court, the release order should remain in effect.

## DISCUSSION

"[T]here is a small but identifiable group of <u>particularly dangerous defendants</u> as to

whom neither the imposition of stringent release conditions nor the prospect of revocation

of release can reasonably assure the safety of the community or other persons.  It is with

respect to this <u>limited group of offenders</u> that the courts must be given the power to deny

release pending trial." 1984 United States Code Cong. & Admin. News 3189 (emphasis

supplied).  Only when there is a "strong probability that a person will commit additional

crimes if released" is the community interest in safety sufficiently compelling to overcome

the criminal defendant's right to liberty. *Id*.  Clear and convincing evidence is needed to

support a finding that no condition or combination of conditions will reasonably assure the

safety of any person and the community.  18 U.S.C. § 3142(f); *U.S. v. Jackson*, 845 F.2d

1262, 1264 n.3 (5th Cir. 1988).  This Court's review of the Magistrate Judge's release order

should lead to the same conclusion reached by that court, that Mr. Hester is not one for

whom no combination of conditions will reasonably assure appearance and the safety of

a person and the community.  The conditions crafted by the Magistrate Judge, with the

added conditions required by the very recent amendments to § 3142, strike the appropriate

balance between an individual's liberty and the community's safety, all the while giving

4

meaning to the presumption of innocence, something of which the Bail Reform Act explicitly requires all to remain mindful.  See 18 U.S.C. § 3142(j).

In many ways, Mr. Hester has already demonstrated that he is not a risk for release. He has lived a law-abiding life since he was released on bail in Elmore County on May 9, 2006, without even a hint of improper conduct.  In addition, Mr. Hester has been supervised by this Court's Pretrial Services Office since his release and has complied with all requirements.  He has reported as directed and the results on the two urinalysis tests administered to him have been negative.  Further, according to the government, "[O]n June 21, 2006, FBI Special Agent Margaret Faulkner learned that Hester had recorded photos of the subject sexual acts on a Maxwell (sic) CD-RW that had been manufactured in Taiwan." *Government's Notice of Appeal of the Magistrate Court's Release Order* at 1. That fact established the necessary nexus for the exercise of federal jurisdiction, yet the government waited more than a month before filing the complaint and obtaining the arrest warrant for Mr. Hester.[1]  Once the arrest warrant for Mr. Hester was issued, a week elapsed before any effort was made to take him into custody.  It is certainly reasonable to conclude, based upon the government's conduct here, that Mr. Hester was not viewed as posing a substantial risk to any person or to the community at large.  If he were viewed as a danger, the resources of the government would have been mobilized on the date that the federal jurisdiction nexus was established and Mr. Hester would have been taken into custody shortly after June 21.  Instead, more than 4 weeks passed before the arrest warrant was

---

[1] The affidavit submitted by SA Faulkner to obtain the arrest warrant for Mr. Hester was sworn to by her on July 24, 2006, the same day as the Magistrate Judge issued the warrant. Upon information and belief, the first attempt to serve the warrant was on July 31, 2006, the same date Mr. Hester spoke with the agent and arranged to meet him the next morning.

sought and another week went by before the effort was made by the FBI to execute the arrest warrant after it had been issued by the Magistrate Judge.

At the detention hearing, and in its notice of appeal, the government relies in significant part upon a letter alleged to have been written by Mr. Hester, to the woman with whom he had been living, shortly after his arrest and incarceration at the Elmore County Jail. The letter is merely one piece of evidence that is part of the decision making calculus for determining whether there are a combination of conditions sufficient to reasonably assure appearance and safety. The multiple conditions are specifically directed at incapacitating Mr. Hester from all activities, save work, religious worship and, with notice to the Pretrial Services Officer, meetings with counsel. Even if the government's contention that Mr. Hester "ingratiated" himself with the families to take advantage of their pre-adult girls were true, and he vigorously denies that claim, the present conditions have removed his ability to act in that manner. The conditions imposed have him socially isolated and unable to interact with third parties. Further, his 12 year old niece and 14 year old nephew who had been living at Mr. Hester's mother's home where he too lives, no longer reside there. They went back to living with their father on August 7, 2006, so there are no minor children in the household where Mr. Hester resides.

The Court should not embark on its review of the Magistrate Judge's release order by starting anew and using a *de novo* standard. As one court which analyzed the Bail Reform Act's review provisions observed:

> [A]lthough the use of the term "[r]eview" in subsections (a) and (b) [of § 3145]
> implies that the district court should not use the "clearly erroneous" standard
> in reviewing the magistrate's findings of fact, it also implies that the court should not, at the
> other extreme, ignore the magistrate's order and written findings and conduct the detention
> hearing entirely anew. Of course, in any appeal or other form of review, the reviewing court,

6

examines the legal conclusions anew, and I do so as to the Magistrate's conclusions of law below. As to a magistrate's factfindings, however, the reasonable inference from Congress' use of the term "[r]eview," instead of, for example, explicitly providing for a *de novo* hearing, is that the court's starting point should be the magistrate's findings, and that the court should then "[r]eview" the magistrate's findings in light of the court's independent "[r]eview," or reconsideration, of the evidence presented to the magistrate.

*United States v. Phillips*, 732 F. Supp. 255, 258 (D. Mass. 1990). That court then noted that "the Eleventh Circuit prescribed use of a similar standard of review lying between a *tabula rasa* detention hearing and review by the "clearly erroneous" standard. The court first held that, when reviewing a magistrate's order regarding pretrial detention, a district court must "undertake an *independent* review of the[ ] case[ ]." *Id.* (citation omitted). The *Phillips* court ultimately stated the Eleventh Circuit's rule: "[A]s both Hurtado and Gaviria teach, in this situation [of a motion pursuant to section 3145(b)] the district court must conduct an independent review to determine whether the Magistrate properly found that pretrial detention is necessary." *Id.* at 259, quoting *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988). Just as in a case under § 3145(b), a district court, in a case being reviewed under § 3145(c), as is the present case, should determine whether the Magistrate Judge found that the stringent conditions, as supplemented by this Court's adding the newly required conditions of electronic monitoring and home detention are conditions which will assure Mr. Hester's appearance and the safety of a person and the community.

## CONCLUSION

While the offense with which Mr. Hester is charged is a serious one and that is a factor for the Court's consideration under § 3142(g), Congress has nonetheless, by enacting the Bail Reform Act, mandated that release be granted unless the government is able to show, by clear and convincing evidence, that there are no conditions which in combination

reasonably assure both the appearance of the accused and the safety of a person and the community.  The combination of conditions currently in effect provide  more than reasonable assurance that Mr. Hester will appear as required and that safety of any particular person, or the community will be safeguarded.  The Court should deny the government's appeal of the release order and further order that Mr. Hester continue in pretrial release under the same conditions, as amended by this Court, as imposed by the Magistrate Judge in her order of August 2, 2006.

Respectfully submitted,


s/Stephen R. Glassroth
STEPHEN R. GLASSROTH
Counsel for Mr. Hester
AL Bar Code: GLA005
The Glassroth Law Firm, P.C.
615 South McDonough Street
Post Office Box 910
Montgomery, AL 36101-0910
Phone:  (334) 263-9900
Fax:  (334) 263-9940
Email: srg@glassrothlaw.com

8

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Mr. K. David Cooke, Assistant United States Attorney and counsel for the government in this matter.

<u>s/Stephen R. Glassroth</u>
Stephen R. Glassroth
The Glassroth Law Firm, P.C.
615 South McDonough Street
Post Office Box 910
Montgomery, AL 36101-0910
Phone:  (334) 263-9900
Fax:  (334) 263-9940
Email: srg@glassrothlaw.com